# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEREK CHRISTOPHER SAPP, | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| | : | |
| ANDREW SAUL, | : | |
| Commissioner of the Social | : | |
| Security Administration, | : | |
| Defendant | : | NO. 19-3652 |

## MEMORANDUM

CAROL SANDRA MOORE WELLS
UNITED STATES MAGISTRATE JUDGE                                                April 1, 2020

      Derek Christopher Sapp ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the final decision of the Commissioner of the Social Security Administration ("the Commissioner"), denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. Plaintiff has filed a brief in support of his request for review, the Commissioner has responded to it, and Plaintiff has filed a reply brief. For the reasons set forth below, Plaintiff's request for review is granted and the case is remanded so that the ALJ can reconsider the weight afforded to the opinions of Plaintiff's two treating neurologists, reevaluate Plaintiff's residual functional capacity and pose hypothetical questions to a vocational expert that accurately reflect all of Plaintiff's credibly established limitations.

### I.    PROCEDURAL HISTORY[1]

      On November 8, 2012, Plaintiff applied for DIB, alleging disability, because of physical and mental health impairments, since October 11, 2012. R. 50. The claim was denied, initially, and upon reconsideration; next, Plaintiff requested a hearing. *Id.* On August 8, 2014, Plaintiff

---

[1] The court has reviewed and considered the following documents in analyzing this case: Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl. Br."), Defendant's Response to Request for Review of Plaintiff ("Resp."), Plaintiff's Reply Brief ("Reply), and the administrative record. ("R.").

appeared before Denise Pasvantis, Administrative Law Judge ("ALJ Pasvantis"), for a hearing in Fort Lauderdale, Florida. *Id.* Plaintiff, represented by an attorney, and a vocational expert testified at the hearing. *Id.* On March 9, 2015, ALJ Pasvantis, using the sequential evaluation process for disability,[2] issued an unfavorable decision. R. 50-59. The Appeals Council denied Plaintiff's request for review, on May 2, 2016. R. 8-13.

Plaintiff then sought judicial review in this court.[3] Pl. Br. at 2. After Plaintiff filed his request for review, the Commissioner sought, and the district court granted, remand, on March 24, 2017. R. 378.

On July 18, 2018, Plaintiff, represented by his current attorney, medical expert Stephen Goldstein ("the ME"), Plaintiff's wife, Dana Sapp, and vocational expert Nancy Harter ("the VE") testified at a video hearing, presided over by administrative law judge Nicholas R. Foster ("the ALJ").[4] R. 379-415. On August 21, 2018, the ALJ, using the requisite sequential evaluation

---

[2] The Social Security Regulations provide the following five-step sequential evaluation for determining whether an adult claimant is disabled:

> 1. If the claimant is working, doing substantial gainful activity, a finding of not disabled is directed. Otherwise proceed to Step 2. *See* 20 C.F.R. § 404.1520(b).
>
> 2. If the claimant is found not to have a severe impairment which significantly limits his physical or mental ability to do basic work activity, a finding of not disabled is directed. Otherwise proceed to Step 3. *See* 20 C.F.R. § 404.1520(c).
>
> 3. If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 of Subpart P of Part 404 of 20 C.F.R., a finding of disabled is directed. Otherwise proceed to Step 4. *See* 20 C.F.R. § 404.1520(d).
>
> 4. If the claimant retains the residual functional capacity to perform past relevant work, a finding of not disabled is directed. Otherwise proceed to Step 5. *See* 20 C.F.R. § 404.1520(f).
>
> 5. The Commissioner will determine whether, given the claimant's residual functional capacity, age, education and past work experience in conjunction with criteria listed in Appendix 2, he is or is not disabled. *See* 20 C.F.R. § 404.1520(g).

[3] Plaintiff had moved from Florida to Philadelphia.
[4] Plaintiff, his wife and the VE were in West Chester, Pennsylvania, the ME testified *via* telephone, and the ALJ was in Richmond, Virginia. R. 381.

process for disability, issued an unfavorable decision. R. 358-70. The Appeals Council denied Plaintiff's request for review, on June 14, 2019, making the ALJ's findings the final determination of the Commissioner. R. 336-41. The parties have consented to this court's jurisdiction, pursuant to 28 U.S.C. § 636(c)(1).

## II. FACTUAL BACKGROUND

A. <u>Personal History</u>

Plaintiff, born on April 25, 1975, R. 394, was 43 years old when the ALJ rendered his decision. He completed high school, R. 369, and worked as an electrician's helper and a grocery store stocker; he last worked in 2011. R. 394, 411. Plaintiff lives with his wife and five year old daughter. R. 397, 406-08.

B. <u>Plaintiff's Testimony</u>

At the July 18, 2018 video hearing, Plaintiff testified about his limitations. R. 394-405. He was first diagnosed with multiple sclerosis ("MS") in 2002. R. 395. This condition causes Plaintiff to experience muscle fatigue; beginning in 2012, he has experienced overwhelming fatigue approximately 14-15 days each month. R. 395-96. On good days, he is able play with his five-year old daughter; on the other days, he basically lays in bed, watching television. R. 397. Plaintiff further testified that he was unable to read, because optic neuritis makes his right eye feel swollen and his vision opaque. R. 398. Plaintiff has lost fine motor skills in his hands, and he experiences numbness in both hands and feet. *Id.* Additionally, torn right knee cartilage causes him difficulty. R. 399.

Plaintiff is receiving treatment for anxiety and depression. R. 402. Despite that treatment, he has recently developed thoughts about harming other people and experienced auditory hallucinations. R. 404. Plaintiff's depression causes him to feel he is an unfit father who should

not be with his daughter. R. 402-03. He believes that his MS exacerbates his depression. R. 403.

C.      <u>Testimony of Plaintiff's Wife</u>

Plaintiff's wife, Dana Sapp, testified at the hearing. R. 406-10. Ms. Sapp and Plaintiff have been a couple, since 2005. R. 406. When they married in 2012, they resided in Florida; extreme fatigue stopped Plaintiff from working shortly before the wedding. R. 406-07. The pair moved to Pennsylvania, in part, because Florida was too hot and exacerbated Plaintiff's MS symptoms. R. 407.

Ms. Sapp has observed Plaintiff fall asleep while playing with their daughter. R. 408. She calls home frequently from work to make sure Plaintiff is awake, because he is their daughter's sole caregiver when she is working.[5] *Id.* Plaintiff is very short-tempered and, consequently, isolates himself from their child and Ms. Sapp. R. 409-10. For these reasons, Ms. Sapp doubts Plaintiff's ability to care for their daughter. R. 409.

D.      <u>Medical Expert's Testimony</u>

The ME, Dr. Goldstein, is board-certified in internal medicine and neurology. R. 383. He did not examine or treat Plaintiff but reviewed all of the medical records, including documents submitted at the hearing. R. 383-85. The ME noted that optic neuritis is a common symptom of MS. R. 385. Although he was reluctant to render a diagnosis of MS, he conceded that the neurological exam that Dr. Sheremata[6] performed in April 2012 contained objective findings that supported a diagnosis of MS. R. 390-93. Finally, the ME testified that Plaintiff's impairments, individually, or in combination, did not meet or medically equal any listed impairment. R. 386.

---

[5] Ms. Sapp's mother used to help with child-care, but she had recently died. R.408.
[6] Dr. Sheremata was Plaintiff's treating neurologist in Florida.

E.   Vocational Testimony

The VE classified Plaintiff's past job as an electrician's helper as medium[7] work, with an SVP of 3[8] and his grocery store stocker job as medium, with an SVP of 2.[9] R. 411. The ALJ asked the VE to consider an individual of Plaintiff's age, education and work experience, capable of performing light[10] work, with the additional limitations of: occasionally kneeling and crawling; frequent ability to climb ramps and stairs, but no ability to climb ladders, ropes and scaffolds; frequent ability to stoop or crouch and reach on the right side; needing to avoid concentrated exposure to unprotected heights, moving mechanical parts and temperature extremes; frequent ability to demonstrate depth perception and distance acuity with the right eye; able to perform only simple, routine, respective tasks, with no production rate expectations. R. 411-12. The VE stated that this person could not perform any of Plaintiff's past work, but could perform several SVP level 2 jobs, or unskilled[11] work: (1) mail clerk (76,000 positions in the national economy); (2) sales attendant (25,000 positions in the national economy) and (3) ticket taker (109,000 positions in the national economy). R. 412. Next, the ALJ asked the VE to consider the same individual, but with the additional limitation of being off-task 15 percent of the day or more. R. 412. The VE opined that this person could perform no work. *Id.*

Plaintiff's attorney asked the VE to consider an individual with the limitations contained in Exhibit 6F, the assessment of Plaintiff's treating neurologist in Florida. R. 413. The VE testified

---

[7] "Medium work involves lifting no more than 50 pounds with frequent lifting or carrying of weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c).
[8] Work at SVP level 3 is semi-skilled work. *See Tavales v. Colvin*, Civ. A. No. 16-2000, 2017 WL 1499248, *3 (E.D. Pa. Feb. 27, 2017).
[9] Work at SVP level 1-2 is unskilled work. *See Baker v. Colvin*, Civ. A. No. 15-1425, 2016 WL 4236561, *5 (E.D. Pa. Aug. 11, 2016).
[10] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b).
[11] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. §§ 404.1568(a).

that such limitations would preclude all work. *Id.* Likewise, if an individual would miss more than four days of work each month, he could not work. *Id.*

### III. THE ALJ's FINDINGS

In her decision, the ALJ issued the following findings:

1. [Plaintiff] last met the insured status requirements of the Social Security Act on December 31, 2017.

2. [Plaintiff] did not engage in substantial gainful activity during the period from his alleged onset date of October 11, 2012 through his date last insured of December 31, 2017 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, [Plaintiff] has the following severe impairments: multiple sclerosis; arthritis of the right shoulder; and meniscal tear and arthritis of the right knee (20 CFR 404.1520(c)).

4. Through the date last insured, [Plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he could frequently climb ramps and stairs, stoop, and crouch, but he could only occasionally kneel and crawl. He could not climb ladders, ropes or scaffolds. He needed to avoid concentrated exposure to temperature extremes and hazards, such as unprotected heights and moving mechanical parts. He could frequently reach with the right upper extremity. He could exhibit far acuity, depth perception, accommodation, and field of vision with the right eye no more than frequently. He was limited to the performance of simple, routine, and repetitive tasks with no production rate expectations, such as found in assembly-line work.

6. Through the date last insured, [Plaintiff] was unable to perform any past relevant work (20 CFR 404.1565).

7. [Plaintiff] was born on April 25, 1975 and was 42 years old, which is defined as a younger individual age 18-49, on the date last inured (20 CFR 404.1563).

8. [Plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is "not disabled," whether or not [he] has transferrable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed (20 CFR 404.1569, 404.1569(a)).

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, at any time form October 11, 2012, the alleged onset date, through December 31, 2017, the date last insured (20 CFR 404.1520(g)).

R. 360, 364, 369-70.

## IV. DISCUSSION

A. Standard of Review

Judicial review of the Commissioner's final decision is as follows. The Commissioner's findings of fact will not be disturbed, if they are supported by substantial evidence. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91 (3d Cir. 2007); *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). Substantial evidence is not "a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation omitted). While it is more than a mere scintilla of evidence, *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019, it may amount to less than an evidentiary preponderance. *Fargnoli v. Massanari*, 247

F.3d 34, 38 (3d Cir. 2001); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Overall, this test is deferential to the ALJ and the court should affirm the ALJ's findings of fact that are supported by substantial evidence, even when the court, acting *de novo,* might have reached a different conclusion. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-91 (3d Cir. 1986), *cert. denied*, 482 U.S. 905 (1987). Indeed, the court is not permitted to weigh the record evidence itself. *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). By contrast, the Commissioner's legal conclusions are subject to *de novo* review. *Poulos*, 474 F.3d at 91; *Schaudeck*, 181 F.3d at 431.

B.    <u>Burden of Proof in Disability Proceedings</u>

To be found "disabled" under the Act, Plaintiff must carry the initial burden of demonstrating that he is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Plaintiff may establish a disability through: (1) medical evidence meeting one or more of the serious impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1; or (2) proof that the impairment is severe enough that Plaintiff cannot engage in any type of "substantial gainful work which exists in the national economy." *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. § 423(d)(2)(A).

Under the first method, Plaintiff is considered *per se* disabled by meeting one of the "listed" impairments. *Heckler*, 461 U.S. at 460. Under the second method, Plaintiff must initially demonstrate that a medically determinable impairment prevents him from returning to his past employment. *See Brown*, 845 F.2d at 1214. If Plaintiff proves that his impairment results in functional limitations to performing his past relevant work, then the burden of proof shifts to the

Commissioner to prove that work does in fact exist in the national economy which Plaintiff can perform given his age, education, work experience and residual functional capacity. *See Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019); *Poulos,* 474 F.3d at 92.

C.  Review of the Administrative Law Judge's Decision

Applying the sequential analysis process, the ALJ determined that, although Plaintiff could not perform his past relevant work, he could perform other light jobs that exist in the national economy; hence, Plaintiff was not disabled. R. 358-70. Plaintiff disputes the ALJ's decision and argues that the ALJ reversibly erred by: (1) failing to find that Plaintiff's mental impairments were severe; (2) failing to assign great weight to the opinions of Plaintiff's two treating neurologists; and (3) consequently, failing to incorporate all of Plaintiff's credibly supported limitations into his residual functional capacity ("RFC") assessment and the hypothetical posed to the VE. Pl. Br. at 6-25. The Commissioner denies Plaintiff's assertions. Resp. at 4-19. This court finds that, although the ALJ properly found Plaintiff's mental impairments not severe, he failed to assign proper weight to the opinions of Plaintiff's treating neurologists; this, in turn, caused him to render a defective RFC assessment and pose a defective hypothetic to the VE. As a result, the ALJ's determination that Plaintiff is not disabled lacks substantial evidence and this case must be remanded.

1.  The ALJ Properly Determined that Plaintiff's Anxiety and Depression were not Severe

Plaintiff alleges that the VE erred by finding that his mental impairments – anxiety and depression – were not severe at step two of the sequential evaluation process. Pl. Br. at 6-13. The Commissioner counters that substantial evidence supports the ALJ's decision that these impairments were not severe. Resp. at 6-11. This court agrees with the Commissioner.

In his decision, the ALJ considered the four, broad areas of mental functioning established

by the regulations. R. 362. In doing so, he found that for all four, Plaintiff had no functional limitation. *Id.* Thus, the ALJ decided that Plaintiff's mental impairments were not severe. *Id.* This is consistent with the governing regulation, which states that, if an ALJ finds that a claimant has no or mild limitation in all four areas of mental functioning, the claimant's mental impairment may be found non-severe. 20 C.F.R. § 404.1520a(d)(1). The ALJ properly applied the governing regulation; hence, there is no basis to find that he erred.

> 2. <u>The ALJ Failed to Assign Proper Weight to the Opinions of Plaintiff's Two Treating Neurologists, hence, his Assessment of Plaintiff's RFC and the Hypothetical Question he posed to the VE were Defective</u>

Plaintiff contends that the ALJ failed to assign proper weight to the opinions of his two treating neurologists, William Sheremata, M.D. and David C. Weisman, M.D., R. 368. Pl. Br. at 13-23. He further maintains that, as a result, the ALJ's RFC assessment as well as the hypothetical question posed to the VE, which yielded the answer the ALJ relied upon, were defective, in that both omitted all of Plaintiff's credibly established limitations. *Id.* at 23-25. The Commissioner denies Plaintiff's contentions. Resp. at 11-18. This court finds that, although the ALJ's decision not to afford controlling weight to the opinions of Plaintiff's treating neurologists was proper, he erroneously decided to afford those opinions little weight. Hence, this case must be remanded so that the ALJ can properly assess Plaintiff's RFC and pose a hypothetical question to a vocational expert that includes all of Plaintiff's credibly established limitations.

The ALJ's error stems from his failure to acknowledge that, even if the treating neurologists' opinions were not entitled to controlling weight, either because they were not well-supported by the record, or were inconsistent with other substantial evidence in the record, they might still have been entitled to more weight than any other medical opinions contained in the record. Social Security Ruling ("SSR") 96-2p explains that, even where a treating physician's

opinion(s) is(are) not entitled to controlling weight, in many cases, they will still be entitled to the greatest weight and will be adopted. *Id.*, 1996 WL 374188, *4. Herein, the ALJ never considered this possibility, because he never mentioned SSR 96-2p. Instead, after summarizing the extensive findings of each treating neurologist, in Exhibits 6F (Dr. Sheremata) and 20F (Dr. Weisman), the ALJ identified areas where each doctor's opinions could be construed as inconsistent with medical and other evidence in the record. R. 368-69. The ALJ, then, summarily concluded that both opinions were entitled to "little weight." *Id.*

Since "substantial evidence" is simply "more than a mere scintilla*,*" *Biestek*, 139 S. Ct. at 1154, this court cannot find that the inconsistent evidence the ALJ identified was not substantial. Hence, the ALJ correctly found that the opinions of neither neurologist were entitled to controlling weight. *See* 20 C.F.R. § 404.1520(c)(2); SSR 96-2p, 1996 WL 374188, *3. However, SSR 96-2p, does not allow the ALJ to automatically conclude – as he did – that, because the treating neurologists' opinions were inconsistent with substantial evidence, those opinions were entitled to little weight. Instead, the ALJ was required to consider, despite the inconsistent evidence in the record, whether their opinions deserved more weight than those of any other medical provider in the record and should be adopted. SSR 96-2p, 1996 WL 374188, *4. Moreover, since Dr. Sheremata's opinions were consistent with Dr. Weisman's, the ALJ should have considered whether their consistency with each other enhanced their weight. *See* 20 C.F.R. § 404.1520(c)(4). Because the ALJ only considered each doctor's opinions separately, he failed to do so. The ALJ's failure constitutes reversible, not harmless, error, because the VE acknowledged that the opinions of Dr. Sheremata alone were sufficient to render a person unable to work. R. 413.

The ALJ's error affects his assessment of Plaintiff's RFC, because, as the ALJ acknowledged, the opinions of Dr. Sheremata and Weisman, indicate, *inter alia*, that Plaintiff can

perform neither the lifting nor the standing and walking requirements for light work. *See* R. 368. Further, the VE answer which the ALJ relied upon presumed the ability to perform light work. R. 411-12. The VE was not presented a hypothetic considering sedentary work, the next lowest exertion level. *See id.* Inasmuch as the RFC assessment the ALJ used in the hypothetical question is flawed, the VE's answer to the question cannot constitute substantial evidence to support the ALJ's conclusion. *See Rutherford*, 399 F.3d at 554 (noting that a hypothetical question must include all of the claimant's credibly established impairments, if the ALJ wishes to rely upon the VE's response to the question). In this circumstance, the case must be remanded for a proper consideration of the opinions of Drs. Sheremata and Weisman, a new RFC assessment and presentation of proper hypothetical questions to a vocational expert. *See id.*

## V. CONCLUSION

Review of the relevant law and the record indicate that that the ALJ reversibly erred when he accorded little weight to the opinions of Doctors Sheremata (Exhibit 6F) and Weisman (Exhibit 20F). Those errors invalidated his RFC assessment as well as the hypothetical question he posed to the VE. Accordingly, Plaintiff's Request for Review is granted. An implementing Order and Order of Judgment follow.